UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AUDREY FRIEBELE, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     vs. | ) | Case No. 1:18-cv-5533 |
| | ) | |
| EXXON MOBIL CORPORATION, | ) | JURY TRIAL DEMANDED |
|     Defendant. | ) | |

**COMPLAINT**

Plaintiff AUDREY FRIEBELE, by and through her counsel, Salvatore Prescott & Porter, PLLC, brings this complaint against her employer, Defendant EXXON MOBIL CORPORATION, and states as follows:

**I.     INTRODUCTION**

1.     EXXON MOBIL's Joliet Refinery has for decades had a male-dominated culture in which egregious sexual harassment against women and retaliation against those who attempt to report sexual harassment is perpetuated by corporate leadership.

2.     AUDREY FRIEBELE was one of only a few female employees working at the Joliet refinery. She had worked for nearly seven years as a Process Technician and was a strong performer with no disciplinary issues. That changed after she reported sexual harassment by two supervisors—one of whom had sent her a picture of his penis and regularly called her names

such as "sexy little bitch," and another who pressured her aggressively and consistently for sexual favors. After their conduct was reported, FRIEBELE was investigated, disciplined, and then terminated for pretextual reasons.

## II. JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction over plaintiff's federal claims, which arise under the laws of the United States, pursuant to 28 U.S.C. § 1331.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), because the events giving rise to the claims occurred in this district.

5. On or about August 9, 2017, FRIEBELE filed a charge of sex discrimination and retaliation with the Equal Employment Opportunity Commission. On or about May 18, 2018, FRIEBELE received a Notice of Right to Sue from the EEOC, authorizing her to commence this lawsuit.

## III. THE PARTIES

6. Plaintiff AUDREY FRIEBELE resides in the Northern District of Illinois. She was an EXXON MOBIL employee from February of 2010 until her termination on or around November 21, 2016.

7. Defendant EXXON MOBIL is a corporation doing business in the Northern District of Illinois. EXXON MOBIL operates a refinery at Arsenal Road and I-55, Channahon, IL 60410, approximately 40 miles southwest of

Chicago, known as the Joliet Refinery. At all times relevant to this action, EXXON MOBIL has employed more than 15 individuals.

## IV. FACTUAL ALLEGATIONS

8. FRIEBELE started working for EXXON MOBIL as a Process Technician at the Joliet Refinery in 2010. As a Process Technician, FRIEBELE was responsible for operating and maintaining unit equipment, performing routine maintenance on unit equipment, conducting surveillance and recording data and performing emergency response duties related to equipment malfunction.

9. The Joliet Refinery is a massive facility and one of the largest operated by EXXON MOBIL. It can be a dangerous workplace, and it has been listed as one of the most dangerous chemical facilities in the country.

10. FRIEBELE has always been one of only a few women in her position at the Refinery. She was good at her job, with no disciplinary issues prior to complaining of egregious sexual harassment by two supervisors.

### A. Friebele Was Subjected To Sex Discrimination And Harassment By Supervisor Lonnie Harper

11. During her employment at EXXON MOBIL, FRIEBELE was subjected to differential treatment based on her sex by Lonnie Harper, who was her direct supervisor on her regular shift, as well as on her "B Crew"

3

overtime shift. Mr. Harper had a senior role at the Joliet Refinery and his father also held a senior role at the company.

12. Mr. Harper routinely called Ms. FRIEBELE sexually inappropriate names both directly to her and to her co-workers. For example, Harper called FRIEBELE "Ms. Hot Pants," "Pretty Little Bitch," and "Sexy Little Bitch."

13. Frequently, Harper would embarrass her by calling her sexual names in front of co-workers. He would treat her worse than male workers by picking apart her work orders, and singling her out to embarrass and humiliate her in front of co-workers. For example, during his employee reviews with other employees, Harper would bring up FRIEBELE's name and speak poorly about her, telling co-workers he was going to laugh when the "Sexy Little Bitch" got fired.

14. Mr. Harper also harassed another woman at the Refinery, Meg Oclese. Both in person and over the radio, Harper would single her out, put her down and go out of his way to make sure that she would fail. Harper did not engage in similar conduct towards male employees.

15. Mr. Harper's conduct was reported to a supervisor, Gimi Tabiadon, who stated that pursuant to company policy he had to take the information to Human Resources ("HR"), which he did. Subsequently, FRIEBELE was contacted by HR, who told her that they would conduct an investigation.

### B. EXXON MOBIL Did A Sham Investigation Of Harper

16. When Harper found out that he was being investigated for his conduct, FRIEBELE was told to "get rid of HR." Before FRIEBELE even met with HR, she was instructed to send an email telling HR that she had spoken to Art Arias, her zone supervisor, and that the matter could be resolved without HR's involvement.

17. Fearing retaliation, FRIEBELE sent the email to HR. HR responded that EXXON MOBIL policy required a full investigation. The following week, FRIEBELE met with HR and provided the names of three witnesses who were aware of Harper's conduct.

18. Several weeks later, Scott Carpenter in HR met with FRIEBELE again and told her that after speaking with witnesses and Mr. Harper they had found no wrongdoing on Mr. Harper's part. Carpenter told FRIEBELE that if she spoke about the HR investigation to anyone – including to the witnesses who were interviewed – she would be terminated.

19. FRIEBELE asked Mr. Carpenter why Mr. Harper wasn't being reprimanded for calling her names and harassing her. Mr. Carpenter told FRIEBELE that "it's just the way things go," and "it's none of your business."

20. FRIEBELE subsequently asked the three witnesses whose names she had given to HR whether they had been interviewed. All three individuals told her that HR had never contacted them.

5

**C.  Friebele Was Also Sexually Harassed By Complex Coordinator Rich Chapman**

21.  Throughout her employment at the Joliet Refinery FRIEBELE also had to endure regular sexual harassment by Rich Chapman, who was the Complex Coordinator at the Joliet Refinery.  The Complex Coordinator is directly responsible for career progression, as he controls special assignments and projects that can lead to promotion.

22.  Chapman's conduct towards FRIEBELE was egregious.  For example, when FRIEBELE was getting certified in the CAT unit, Mr. Chapman was giving her a walk-through of the building.  He grabbed intimate parts of FRIEBELE's body while telling her that if she answered any questions wrong, she would have to go to the bar and have a drink with him and ride naked on his motorcycle.

23.  Chapman also told FRIEBELE about sexual things that he wanted to do to her.  FRIEBELE told him to stop, that she was uncomfortable, and that he could get in trouble. Chapman would respond by saying things like: "Well, OK, I guess you just want to be an operator all of your life," and "I guess you don't want a promotion."

24.  When FRIEBELE was pregnant, Chapman told her that her being pregnant "turned him on" and that he "fantasized" about bending her over his desk and having sex with her while pregnant.

6

25. Chapman sent her sexually explicit messages through the work computer messenger system. He sent her pictures of his penis and exposed genitalia at his work desk in his office. And he asked FRIEBELE to take rides to the back of the facility in his company truck to concealed areas of the property. Once there, he would touch her without her consent and tell her that he wanted to have sex with her every time he saw her.

26. Chapman's sexual conduct towards Plaintiff continued until her termination in 2016.

### D. When Friebele Reported Chapman's Harassment, She Was Terminated And No Investigation of Chapman Was Conducted

27. FRIEBELE told Chapman to stop his harassment, which angered him. Chapman then retaliated against FRIEBELE by passing her over for jobs and special assignments.

28. FRIEBLE reported Chapman's behavior to Doug Lynn, her immediate boss.

29. Chapman told FRIEBELE that Doug Lynn had told him about her complaints of sexual harassment, and that he felt he had to take steps to "cover himself." He told her that if she would just "do as she needed to do," he could "turn it all around." Chapman told FRIEBLE prior to her termination that if she would only give him a blow job that things would improve for her in terms of how she was being treated by managers.

30. FRIEBELE was upset by these comments and threats to retaliate. She knew that Doug Lynn had gone to Chapman, so she then went to Greg Schultz, her zone supervisor, who assured her that the company would investigate and that he would notify HR. Shortly thereafter, and before any investigation was done, FRIEBELE was notified that *she* was being investigated for allegedly violating company policy. She was terminated within a few weeks.

31. FRIEBELE's alleged violations of company policy were pretextual and were minor in comparison to the types of policy violations that male colleagues routinely engaged in without consequence.

## COUNT I
### Discrimination Based on Sex
### Title VII

32. FRIEBELE incorporates the foregoing allegations here.

33. FRIEBELE is one of very few women working at the Joliet Refinery.

34. Title VII provides that employers may not discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment because of the individual's sex.

35. FRIEBELE is an employee of EXXON MOBIL as defined by Title VII.

36. EXXON MOBIL is an employer as defined by Title VII.

37. FRIEBELE has been targeted and harassed, disciplined and terminated because she is a woman. She has been treated differently than similarly-situated male employees.

38. The actions of EXXON MOBIL were intentional, willful, in deliberate disregard of, and with reckless indifference to FRIEBELE's rights.

39. As a direct and proximate result of those actions, the terms, conditions, and privileges of FRIEBELE'S employment were adversely affected.

40. As a further direct and proximate result of EXXON MOBIL's unlawful actions against FRIEBELE as described, FREIBELE has sustained injuries and damages, including but not limited to the loss of earnings and earning capacity; physical harm; and mental and emotional distress, including anxiety, mental anguish, humiliation, and embarrassment.

## COUNT II
### Hostile Work Environment--Sex Harassment
### Title VII

41. FRIEBELE incorporates the foregoing allegations here.

42. Throughout her employment with EXXON MOBIL, FRIEBELE was subjected to conduct that is sexual in nature and directed at her because of sex. That conduct was severe and pervasive and was not welcome. The conduct was engaged in by supervisors.

43. FRIEBELE reported the conduct, but it did not stop.

44. The discriminatory conduct included, but was not limited to: verbal harassment and slurs; explicit pictures and messages of a sexual nature; physical harassment and touching; and denial of opportunities for training, promotion, and additional compensation.

45. The actions of EXXON MOBIL were intentional, willful, in deliberate disregard of, and with reckless indifference to FRIEBELE's rights.

46. As a direct and proximate result of those actions, the terms, conditions, and privileges of FRIEBELE'S employment were adversely affected.

47. As a further direct and proximate result of EXXON MOBIL's unlawful actions against FRIEBELE as described, FREIBELE has sustained injuries and damages, including but not limited to the loss of earnings and earning capacity; physical harm; and mental and emotional distress, including anxiety, mental anguish, humiliation, and embarrassment.

## COUNT III
### Quid Pro Quo Sexual Harassment
### Title VII

48. FRIEBELE incorporates the foregoing allegations here.

49. FRIEBELE was denied promotional and training opportunities and had her job threatened for objecting to supervisors' efforts to engage in sexual contact with her.

50. After she refused to go along with a supervisor's sexual advances, she was terminated.

51. The actions of EXXON MOBIL were intentional, willful, in deliberate disregard of, and with reckless indifference to FRIEBELE's rights.

52. As a direct and proximate result of those actions, the terms, conditions, and privileges of FRIEBELE'S employment were adversely affected.

53. As a further direct and proximate result of EXXON MOBIL's unlawful actions against FRIEBELE as described, FREIBELE has sustained injuries and damages, including but not limited to the loss of earnings and earning capacity; physical harm; and mental and emotional distress, including anxiety, mental anguish, humiliation, and embarrassment.

## COUNT IV
### Retaliation
### Title VII

54. FRIEBELE incorporates the foregoing allegations here.

11

55. FRIEBELE engaged in protected activity when she made complaints to EXXON MOBIL, including to supervisors and to Human Resources, and participated in the Company's investigation of harassment and discrimination by her supervisors.

56. EXXON MOBIL retaliated against FRIEBELE by the conduct described above, including but not limited to: discouraging her from going to HR; failing to conduct an appropriate investigation; and failing to discipline her male supervisors who harassed her; continuing to assign her to work for and with men who had harassed and harmed her; and disciplining her and then terminating her for conduct that other colleagues who had not reported harassment would not be disciplined and/or terminated for.

57. EXXON MOBIL's actions were intentional, willful, in deliberate disregard of, and with reckless indifference to FRIEBELE's rights.

58. As a direct and proximate result of those actions, the terms, conditions, and privileges of FRIEBELE's employment were adversely affected.

59. As a further direct and proximate result of EXXON MOBIL's unlawful actions against FREIBELE as described, FRIEBELE has sustained injuries and damages, including but not limited to the loss of earnings and earning capacity; physical harm; and mental and emotional distress, including anxiety, mental anguish, humiliation, and embarrassment.

WHEREFORE, Plaintiff AUDREY FRIEBELE requests judgment in her favor and against EXXON MOBIL, as follows:

a. Declaratory relief, including but not limited to a declaration that EXXON MOBIL violated Title VII;

b. Injunctive relief, including but not limited to requiring EXXON MOBIL to enact and implement policies and procedures to eliminate harassment based on sex at the EXXON MOBIL Joliet Refinery;

c. Compensatory damages in an amount to be determined at trial;

d. Punitive damages;

e. Attorneys' fees, costs, and expenses;

f. Pre-judgment and post-judgment interest; and

g. To grant further relief as this Court should find just and proper.

| | | |
|---|---|---|
| Dated: August 14, 2018 | By: | /s/ Jennifer B. Salvatore |

                               JENNIFER B. SALVATORE
Salvatore Prescott & Porter, PLLC
105 E. Main St.
Northville, MI 48167
P: (248) 679-8711
F: (248) 773-7280
salvatore@spplawyers.com

KYLE A. PALAZZOLO
Salvatore Prescott & Porter, PLLC
1010 Davis Street
Evanston, IL 60201
P: (312) 283-5711
F: (312) 724-8353
palazzolo@spplawyers.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AUDREY FRIEBELE, )<br>    Plaintiff, )<br> )<br>vs. )<br> )<br>EXXON MOBIL CORPORATION, )<br>    Defendant. ) | JURY TRIAL DEMANDED |

## DEMAND FOR JURY TRIAL

NOW COMES Plaintiff, AUDREY FRIEBELE, by and through her attorneys, Salvatore Prescott & Porter, PLLC, and hereby demands a jury trial in the above-captioned matter.

Dated:  August 14, 2018

By:   /s/ Jennifer B. Salvatore

JENNIFER B. SALVATORE
Salvatore Prescott & Porter, PLLC
105 E. Main St.
Northville, MI 48167
P: (248) 679-8711
F: (248) 773-7280
salvatore@spplawyers.com

KYLE A. PALAZZOLO
Salvatore Prescott & Porter, PLLC
1010 Davis Street
Evanston, IL 60201
P: (312) 283-5711
F: (312) 724-8353
palazzolo@spplawyers.com

Attorneys for Plaintiff